O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DOLORES FLORES, | ) | NO. CV 11-10714-MAN |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff filed a Complaint on December 29, 2011, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for supplemental security income benefits ("SSI"). On February 15, 2012, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on September 11, 2012, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, in the first alternative, finding plaintiff disabled as of her fifty-fifth birthday and ordering the payment of benefits, or, in the second alternative, remanding the matter for further administrative proceedings; and defendant seeks an order

affirming the Commissioner's decision or, in the alternative, remanding the matter for further administrative proceedings.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On March 31, 2009, plaintiff filed an application for SSI, alleging an inability to work since August 31, 2001 (Administrative Record ("A.R." 19), due to neck pain, back pain, knee and ankle injury, and anxiety (A.R. 22, 64, 69).  Plaintiff has past relevant work experience as a mail clerk.  (A.R. 24.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 19, 64-67, 69-73), plaintiff requested a hearing (A.R. 19, 48-54).  On February 7, 2011, plaintiff, who was represented by an attorney, appeared and testified at a hearing before Administrative Law Judge Robert A. Evans (the "ALJ").  (A.R. 19, 30-47.) On March 3, 2011, the ALJ denied plaintiff's claim (A.R. 19-25), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-5).  That decision is now at issue in this action.

### SUMMARY OF ADMINISTRATIVE DECISION

In his decision, the ALJ found that plaintiff has not engaged in substantial gainful activity since March 31, 2009, the application date. (A.R. 21.)  The ALJ further found that plaintiff has the severe impairments of "status post lumbar fusion[,] degenerative disc disease

in the cervical and lumbar spines[,] and anxiety." (A.R. 21.) The ALJ concluded that such impairments, however, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light, unskilled work as defined in 20 C.F.R. § 416.967(b). (A.R. 21.) The ALJ found that plaintiff's past relevant work as a mail clerk does not require the performance of work-related activities precluded by plaintiff's RFC. (A.R. 24.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since March 31, 2009. (*Id.*)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges that the ALJ: (1) did not properly determine whether plaintiff meets or equals Listing 12.05(c); and (2) failed to properly consider the opinions of plaintiff's physicians and, thus, did

4

not properly assess her RFC or her ability to perform her past relevant work.  (Joint Stipulation ("Joint Stip.") at 3-13, 18-24.)

I.  **The ALJ's Determination That Plaintiff Does Not Meet Or Equal A Listing Is Not Supported By Substantial Evidence.**

At step three of the sequential evaluation process, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in the Appendix to federal regulations.[1]  20 C.F.R. S 416.920(d).  Conditions set forth in the Listing of Impairments ("Listings") are considered so severe that "they are **irrebuttably** presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs."  Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995)(emphasis added).  The Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary."  Sullivan v. Zebley, 493 U.S. 521, 532 (1990).  If a claimant shows that his impairments meet or equal a Listing, he will be found presumptively disabled.  20 C.F.R. §§ 416.925-416.926; see Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1221-22 (9th Cir. 2010).

The claimant bears the burden of establishing a prima facie case of disability under the Listings.  See Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002).  To "meet" a listed impairment, the claimant must establish that his condition satisfies each element of the listed impairment.  See Zebley, 493 U.S. at 530; Tackett v. Apfel, 180 F.3d

---

[1]  The Appendix containing the listed impairments appears in the Regulations at 20 C.F.R., Pt 404, Subpt. P, App. 1.

1094, 1098-99 (9th Cir. 1999).   To "equal" a listed impairment, the claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the listed impairment.   *Id.* at 1099-1100.

Plaintiff contends that the evidence establishes that her impairment meets or equals the criteria of Listing 12.05C.   Under Listing 12.05C, plaintiff must be found disabled if she shows the following:

> 12.05 Mental Retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairments before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

> . . . .

> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Part 404, Subpt. P, App. 1 § 12.05.

6

A.   <u>Valid IQ Score</u>

When a claimant has different IQ scores for her verbal, performance, and/or full scale IQ, the lowest score is used to evaluate whether the claimant meets or equals Listing 12.05(C).  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c).  In an August 15, 2009 consultative evaluation by clinical psychologist Ahmad R. Riahinejad, Ph.D., plaintiff was assessed with a verbal IQ score of 70, a performance IQ score of 77, and a full scale I.Q. of 71 on the Wechsler Adult Intelligence Scale.  (A.R. 378.)  None of these scores were found to be expressly invalid by the ALJ, and in fact, the ALJ gave substantial weight to the findings of Dr. Riahinejad in his decision. Accordingly, because plaintiff has a valid verbal IQ score of 70, it appears that she satisfies this requirement of Listing 12.05(C).

B.   <u>Additional Impairment</u>

Listing 12.05(C) further requires that plaintiff has "a physical or other mental impairment imposing an additional and significant work-related limitation of functioning."  20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.05(C).  "[A]n impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities in more than slight or minimal."  <u>Fanning v. Bowen</u>, 827 F.2d 631, 633 (9th Cir. 1987).  In other words, this requirement is met when plaintiff has an additional impairment(s) that is "severe."  *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.00(A) (noting that "[f]or Listing 12.05[(C)], we will assess the degree of functional limitation the additional impairment(s) imposes to determine

7

if it significantly limits your physical or mental ability to do basic work activities, *i.e.*, is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)").   At step two, the ALJ found that plaintiff's impairments of "status post lumbar fusion[,] degenerative disc disease in the cervical and lumbar spines[,] and anxiety" are "severe" as defined by 20 C.F.R. § 416.920(c). (A.R. 21.)  Accordingly, plaintiff satisfies the second component of Listing 12.05(C).


    C.   <u>Onset Prior To Age 22</u>


    Plaintiff also must show that she has significantly subaverage general intellectual functioning with deficits in adaptive functioning with an onset *before age 22*.   20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.05.   As noted *supra*, Dr. Riahinejad assessed plaintiff with a verbal IQ score of 70, a performance IQ score of 77, and a full scale I.Q. of 71.  (A.R. 378.)  Dr. Riahinejad noted that "[t]hese scores place [plaintiff] within the borderline range of intellectual ability." (*Id.*)  Dr. Riahinejad opined that plaintiff is able to, *inter alia*, understand, remember, and carry out simple and repetitive instructions but noted that plaintiff has moderate difficulty understanding, remembering, and carrying out complex and detailed instructions.  (A.R. 379.)  Likewise, State Agency medical consultant L. O. Mallare, M.D., whose opinion the ALJ afforded great weight, found plaintiff to be, *inter alia,* moderately limited in her ability to:  understand, remember, and carry out detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  (A.R. 394.)  Based on plaintiff's

mental function, Dr. Mallare limited plaintiff to performing tasks with one to two step instructions.  (A.R. 396.)

The Commissioner contends, however, that plaintiff has failed to demonstrate the onset of her impairment before the age of 22.  While it is true that plaintiff's IQ tests were administered when she was 53 years old, "courts have held that a valid qualifying IQ score obtained by the claimant after the age of 22 creates a rebuttable presumption that the claimant's mental retardation began prior to the age of 22, as it is presumed that IQ scores remain relatively constant during a person's lifetime." Schuler v. Astrue, 2010 U.S. Dist. LEXIS 34744, at *17 (C.D. Cal. Cal. Apr. 7, 2010); *see* Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir. 2001)(noting that IQ tests after age 22 satisfy the listing criteria and "create a rebuttable presumption of a fairly constant IQ throughout life")(citing Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001), Luckey v. U.S. Dept. Of Health and Hum. Servs., 890 F.2d 666, 668 at *10-12(4th Cir. 1989); *see also* Woods v. Astrue, 2012 U.S. Dist. LEXIS 30211, at *10-*12 (E.D. Cal. Mar. 7, 2012)(collecting cases and adopting presumption); Forsythe v. Astrue, 2012 U.S. Dist. LEXIS 7744, at *18-*20 (E.D. Cal. Jan. 24, 2012)(same); Jackson v. Astrue, 2008 U.S. Dist. LEXIS 100411, at *6 (C.D. Cal. Dec. 11 2008)(noting that "several circuits have held that valid IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life," and finding "the reasoning of the Seventh, Eighth, and Eleventh Circuits to be persuasive").  This Court also finds this reasoning persuasive and notes that the ALJ did not provide any evidence to rebut this presumption.

However, while the above-noted evidence is arguably sufficient to satisfy Listing 12.05(C), the Court cannot conclude that a finding in plaintiff's favor is warranted. For example, although plaintiff dropped out of high school in the eleventh grade, she was "an average student" and not in any special education classes. (A.R. 376.) In addition, as the Commissioner properly notes, there is evidence that plaintiff was capable of engaging in unskilled work despite her intellectual functioning difficulties. (Joint Stip. at 17; *see also* A.R. 24 (noting that plaintiff "stated she worked at See's candies for 6 weeks and stopped because it was seasonal, not because she was disabled.")

Moreover, and critically, the ALJ's decision provides this Court with absolutely no guidance as to how the ALJ wrestled with these issues. Beyond stating that plaintiff did not meet a Listing, the ALJ never mentioned Listing 12.05(C) and/or addressed whether plaintiff met or equaled any of the requirements for that Listing. *See* <u>Thresher v. Astrue</u>, 283 Fed. Appx. 473, 475 (9th Cir. 2008)(remanding case so that the ALJ could consider whether plaintiff met Listing 12.05(C) and noting that "the ALJ's failure to mention section 12.05 and, in particular, Listing 12.05[(C)] makes it unclear whether the ALJ came to grips with the specific requirements of the section when she issued her decision"). Accordingly, remand is appropriate so that the ALJ may properly consider whether plaintiff meets or equals Listing 12.05(C).[2]

---

[2]   At a minimum, even if the ALJ determines on remand that plaintiff does not meet and/or equal Listing 12.05(C), it appears that her borderline intellectual functioning impairment may constitute a "severe" impairment and, thus, should be considered in assessing her RFC.  20 C.F.R. § 416.920(c)(noting that a severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities"); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir.

## II. **Remand Is Necessary So That The ALJ Can Properly Consider The Opinions Of Dr. Riahinjad And Dr. Mallare And Revisit His RFC Assessment And Determination That Plaintiff Can Perform Her Past Relevant Work.**

Plaintiff claims that the ALJ erred in failing to include in his assessment of plaintiff's RFC the opinions of Dr. Riahinjad and Dr. Mallare that plaintiff should be limited to simple and repetitive tasks -- the inclusion of which may have affected the ALJ's determination that plaintiff can perform her past relevant work.

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(d).

---

1996)(noting that despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims").

The Court has considered the Commissioner's claim that under Gregor v. Barnhart, 464 F.3d 968 (9th Cir. 2006), plaintiff has waived the Listings issue, because she never "alleged disability based on mental retardation until coming before this Court." (A.R. 14.) In Gregor, the Ninth Circuit held that plaintiff waived various issues, because "he did not raise them before the district court." Id. at 973 (emphasis added). However, in this case, unlike in Gregor, plaintiff's attorney did raise the Listing 12.05(C) issue at the Administrative Hearing (A.R. 46), and the issue has again been raised in this district court (Joint Stip. at 3-14, 18-20). Accordingly, the Commissioner's contention is misguided.

1    In determining a claimant's RFC, an ALJ will consider all the
2    relevant evidence in the record.   20 C.F.R. § 416.945(a)(1).   In so
3    doing, the ALJ will consider all claimant's medically determinable
4    impairments, including those that are not "'severe.'" 20 C.F.R.
5    § 416.945(a)(2).   The ALJ also will consider "any statement about what
6    [the claimant] can still do that have been provided by medical sources."
7    20 C.F.R. § 416.945(a)(3).

8

9    As relevant here, after performing a consultative, psychological
10   evaluation of plaintiff on August 15, 2009, Dr. Riahinjad, whose opinion
11   the ALJ gave "significant weight" (A.R. 23), diagnosed plaintiff with
12   dysthmia, borderline intellectual functioning, and mild to moderate
13   psychosocial stressors (A.R. 379).   Dr. Riahinjad opined that plaintiff
14   could, *inter alia*, understand, remember, and carry out *simple and*
15   *repetitive* instructions, but she "could have moderate difficulty
16   understanding, remembering[,] and carrying out complex and detailed
17   instructions."   (*Id.*)   Similarly, after conducting a comprehensive
18   medical record review, Dr. Mallare, whose opinion the ALJ also afforded
19   "significant weight" (A.R. 23), opined that plaintiff "has adequate
20   mental function to perform 1-2 step instr[uctions]" and is able to
21   interact appropriately w[ith] others and adapt to simple changes in the
22   workplace" (A.R. 396).

23

24   Notwithstanding the fact that the ALJ gave the opinions of Dr.
25   Riahinjad and Dr. Mallare significant weight, the ALJ did not find that
26   plaintiff has a borderline intellectual functioning impairment, and he
27   did not include a restriction to simple and repetitive tasks and/or to
28   tasks involving one to two step instructions in plaintiff's RFC.

12

1   Further, the ALJ failed to provide *any* reason, let alone an appropriate

2   reason, for rejecting the opinions of Dr. Riahinjad and Dr. Mallare on

3   this significant . This constitutes error.

4

5       Moreover, the ALJ's error is not harmless. While the Commissioner

6   contends that the ALJ's RFC assessment -- limiting plaintiff to

7   performing "light, unskilled work" -- and his determination that

8   plaintiff can perform her past relevant work as a mail clerk -- a job

9   which has a reasoning level of three -- are consistent with the opinions

10  of Dr. Riahinjad and Dr. Mallare, the Court is not convinced that this

11  contention is correct. Currently, there is a split among the circuit

12  courts on whether a limitation to simple, repetitive, or routine tasks

13  is compatible with the performance of jobs, such as that of mail clerk,

14  with a level three reasoning as defined in the Dictionary of

15  Occupational Titles ("DOT"). Adams v. Astrue, 2011 WL 1833015 (N.D.

16  Cal. May 13, 2011)(*comparing* Hackett v. Barnhart, 395 F.3d 1168, 1176

17  (10th Cir. 2005)(concluding that a surveillance systems monitor job with

18  a DOT reasoning level of three was not suitable for a claimant whose RFC

19  limited her to "simple and routine work tasks") *with* Terry v. Astrue,

20  580 F.3d 471, 478 (7th Cir. 2009)(concluding that a claimant limited to

21  "simple" work could perform the job of surveillance systems monitor,

22  which had a reasoning level of three) *and* Renfrow v. Astrue, 496 F.3d

23  918, 920-21 (8th Cir. 2007)(concluding that a claimant with an inability

24  to do "complex technical work" was not precluded from jobs with a

25  reasoning level of three)). Although the Ninth Circuit has yet to

26  address this question directly, the weight of authority in this Circuit

27  holds that a limitation to simple, repetitive, or routine tasks is

28

incompatible with a reasoning level of three.[3]  Accordingly, because the ALJ failed to provide appropriate reasons for excluding the limitation to simple, repetitive, and/or one to two step instruction tasks, and this limitation could impact plaintiff's ability to perform her past relevant work involving level three reasoning, the ALJ's error is not harmless, and reversal and remand are appropriate.

///

///

---

[3]   As noted in <u>Torrez v. Astrue</u>, 2010 U.S. Dist. LEXIS 69406 (E.D. Cal. June 21, 2010):

> Several district court cases in this circuit question whether a claimant limited to simple, repetitive tasks, is capable of performing jobs requiring level three reasoning under the DOT. In <u>McGensy v. Astrue</u>, 2010 U.S. Dist. LEXIS 46160, 2010 WL 1875810 (C.D. Cal. May 11, 2010), the Court noted that while case law has held that "a limitation to 'simple, repetitive tasks' is consistent with level two reasoning," this restriction is "inconsistent" with the requirements for level three reasoning, in particular the job of *mail clerk*.  2010 U.S. Dist LEXIS 46160, [WL] at *3 (citing <u>Pak v. Astrue</u>, 2009 U.S. Dist. LEXIS 60928, 2009 WL 2151361 at *7 (C.D. Cal. July 14, 2009)("The Court finds that the DOT's Reasoning Level three requirement conflicts with the ALJ's prescribed limitation that Plaintiff could perform only simple, repetitive work"); <u>Tudino v. Barnhart</u>, 2008 U.S. Dist. LEXIS 68499, 2008 WL 4161443 at *11 (S.D. Cal. Sept. 5, 2008)("[l]evel-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks"; remand to ALJ to "address the conflict between Plaintiff's limitation to 'simple, repetitive tasks' and the level-three reasoning"); <u>Squier v. Astrue</u>, 2008 U.S. Dist. LEXIS 85341, 2008 WL 2537129 at *5 (C.D. Cal. June 24, 2008)(reasoning level three is "inconsistent with a limitation to simple repetitive work")).  In addition, in <u>Bagshaw v. Astrue</u>, 2010 U.S. Dist. LEXIS 8976, 2010 WL 256544 at *5 (C.D. Cal. January 20, 2010), the court expressly cited <u>Hackett [v. Barnhart</u>, 395 F.3d 1168, 1176 (10th Cir. 2005)] in concluding that a *mail clerk* job, which requires level three reasoning under the DOT, was "inconsistent with [plaintiff's] intellectual functional capacity limitation to simple, routine work."

2010 U.S. Dist. LEXIS 69406, at *22-*24 (finding that the "DOT precludes a person restricted to simple, repetitive tasks, from performing work . . . that requires level three reasoning).

**III. <u>Remand Is Required</u>.**

As indicated above, the Court has found that reversible error occurred.   Because outstanding issues must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir. 2000).  On remand, the ALJ must consider whether plaintiff equals Listing 12.05(C), and if the ALJ finds that plaintiff does not, then the  ALJ must adequately explain his reasoning.   Additionally, the ALJ must give the opinions of Dr. Riahinjad and Dr. Mallare their deserved weight or give appropriate reasons for not doing so.   In so doing, the ALJ may need to reassess plaintiff's RFC, in which case a vocational expert may be necessary to determine what work, if any, plaintiff can perform.

///
///
///
///
///
///
///
///
///
///
///
///
///

15

1                           **CONCLUSION**

2

3     Accordingly, for the reasons stated above, the Commissioner's

4 decision is REVERSED, and this case is REMANDED for further proceedings

5 consistent with the Memorandum Opinion and Order.

6

7     IT IS FURTHER ORDERED that the Clerk of the Court shall serve

8 copies of this Memorandum Opinion and Order and the Judgment on counsel

9 for plaintiff and for defendant.

10

11     **LET JUDGMENT BE ENTERED ACCORDINGLY.**

12

13 DATED:  January 11, 2013

14                            _____

15                              MARGARET A. NAGLE
                      UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28